**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT BUNCE,**

                              **Petitioner,**

vs.                                                  9:10-CV-169
                                                                  (MAD)

**WILLIAM BROWN, Superintendent, Eastern**
**Correctional Facility,**

                              **Respondent.**
_____

**APPEARANCES:**                                      **OF COUNSEL:**

**FRANZBLAU DRATCH, P.C.**              **STEPHEN N. DRATCH, ESQ.**
233 Broadway
Suite 2701
New York, New York 10271
Attorneys for Petitioner

**OFFICE OF THE NEW YORK**            **LISA E. FLEISCHMANN, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. Petitioner's state custody arises from a judgment of conviction entered on May 18, 2005, in New York State County Court, Columbia County, convicting him, upon his plea of guilty, of Sexual Abuse in the First Degree, Sodomy in the First Degree, Sodomy in the Second Degree, and Attempted Sodomy in the First Degree. Petitioner was sentenced to serve twelve to eighteen years' incarceration.

Currently before the Court is petitioner's petition for a writ of habeas corpus in which he alleges that his guilty plea was not knowingly and voluntarily entered and that he received ineffective assistance of counsel.

## II. BACKGROUND

On or about January 11, 2005, petitioner was indicted in a four count indictment alleging Sodomy in the Second Degree in violation of New York Penal Law § 130.34(1) (Count I), Sexual Abuse in the First Degree in violation of New York Penal Law § 130.65(2) (Count II), Sodomy in the First Degree in violation of New York Penal Law § 130.50(3) (Count III), and Attempted Sodomy in the First Degree in violation of New York Penal Law §§ 110.00 and 130.50(3) (Count IV). *See* Index of State Court Records at Exhibit 11, at 5-7. Counts II and IV occurred in 1996, while Counts I and II occurred in 2001.

In anticipation of his guilty plea, petitioner signed an eight-page plea agreement and initialed each applicable provision of the agreement. *See id.* at 70-77. The provisions included the maximum sentences that petitioner faced whether convicted by guilty plea or after trial, the trial rights that petitioner would waive by pleading guilty, and the fact that his crimes occurred in Columbia County. *See id.*

On April 6, 2005, petitioner, with his counsel, Michael C. Howard, Esq., pleaded guilty to the entire indictment, under the "joint recommendation" that petitioner receive a determinate six-year prison sentence, plus three years' post-release supervision, and that he waive his right to appeal. *See* Dkt. No. 1-1 at Exhibit "E," at 2-3. Petitioner was sworn in and the clerk showed petitioner the plea agreement. *See id.* at 3-4. Petitioner acknowledged his initials in the margins and his signature on the last page. *See id.* Petitioner swore "to the truth" of the plea agreement,

2

and stated that he had "ma[d]e this document in consultation with his attorney." *See id.* at 4. Petitioner acknowledged that he understood the agreement, that he was satisfied with his counsel's representation and advice, and that he had no questions for the court or counsel. *See id.* at 4-5.

Additionally, petitioner answered "[n]o" when asked if he had "any disabilities that affect[ed his] ability to understand these proceedings and this document[.]" *See id.* at 5. Moreover, petitioner informed the court that, despite his previous concerns regarding his counsel's performance, he was now satisfied with the representation he received. *See id.* Petitioner then acknowledged that he wished to relinquish his rights to remain silent and to a trial. *See id.* at 5-6, 7.

Thereafter, petitioner told the court that he was aware that he faced up to fifty-four years in prison, whether he was "convicted by plea or after" a jury trial." *See id.* at 6. Petitioner stated that he was pleading guilty "freely and voluntarily;" that he had not been threatened or made any promises to induce him to plead guilty; and that he had no "doubt in [his] mind that" he wanted to relinquish his rights and plead guilty. *See id.*

Petitioner then admitted, after consulting with Mr. Howard, that, on August 23, 2001, in Columbia County, he had contact with a boy under fifteen years of age. *See id.* at 8. When asked to state exactly what occurred, petitioner informed the court that he did not have his glasses. *See id.* at 8-9. The court explained that it did not want petitioner "to read it," and again reminded petitioner that if he wished to plead guilty, he had to admit his crimes; he could not "read anything." *See id.* at 9. After conferring with his attorney, petitioner admitted to the conduct charged. *See id.* at 10-11.

The court then asked petitioner to state the acts he committed with a child under the age of eleven in Columbia County, sometime between December 1 and 24, 1996. *See id.* at 12. When

petitioner conferred with his attorney, the court remarked that it did not want counsel to state petitioner's acts. *See id.* (stating that, "[i]f you don't know what you did, then I don't want you to plead guilty"). Petitioner's counsel then explained that he and petitioner "went over this" and that petitioner "knows what he did" and that "he's just a little nervous, Judge. He doesn't know the exact words to say." *Id.* The court responded that it would not "accept a plea if he's simply mouthing the words that he gets from his lawyer[.]" *Id.* Petitioner subsequently admitted to the conduct charged in those counts of the indictment. *See id.* at 13.

At the May 18, 2005 sentencing, the prosecutor and petitioner's counsel asked the court to impose the jointly recommended sentence of six-years' incarceration, plus three years of post-release supervision. *See* Dkt. No. 1-1 at Exhibit "F," at 2, 4-5. When given the opportunity to address the court, petitioner stated that he was sorry for his crimes. *See id.* at 5. The court stated that it believed that petitioner was "truly sorry that [he] got caught." *See id.* at 5-6. The court explained that "[w]hile [it] ha[d] carefully considered the joint recommendation, as well as the Pre-Sentence Investigation, and [gave] great weight to the joint recommendation, particularly the People's recommendation, under the circumstances, the sentence is inappropriate." The court further stated that,

> [y]ou victimized two children, which has already had an impact upon them that in all likelihood will last the rest of their lives. It is this court's obligation not only to deter you from such conduct in the future but to fashion a sentence that may deter others like you from similar conduct. I see no reasonable belief that it is at all even minimally likely that you can or will be rehabilitated, or that you will refrain from re-offending were you to be released to parole or post-release supervision. Lastly, you should be punished for your conduct.

4

*See id.* at 6. The court further explained that it considered the fact that petitioner's guilty plea "had the effect of obviating the need of the children to testify in open court, which is a substantial consideration, in this court's opinion." *See id.* at 7.

On the second-degree sodomy count (Count I), the court sentenced petitioner to an indeterminate term of two-to-six years' imprisonment; on the first-degree sexual abuse count (Count II), the court imposed a determinate prison term of six years; on the first-degree sodomy count (Count III), the court imposed an indeterminate sentence of six-to-eighteen years; and on the attempted first-degree sodomy count (Count IV), the court imposed a five-to-fifteen year sentence. *See id.* at 6-8. As to the determinate count, the court sentenced petitioner to a three-year period of post-release supervision. *See id.* at 8. The court ordered the sentences for Counts I and II to run concurrently with each other, and the sentences for Counts III and IV to run concurrently with each other. *See id.* at 8-9. Moreover, the "sentences imposed under Counts 1 and 2 and those imposed under Count 3 shall be served consecutively with one another . . . which will be an effective minimum period of incarceration of twelve years." *See id.* at 9. At the court's prompting, Mr. Howard explained to petitioner that, because the court had imposed a sentence at variance with the joint agreement, he could appeal it. *See id.*

On the following day, May 19th, counsel and petitioner appeared again before the court. *See id.* at 11.[1] The court explained that it had mistakenly stated that the maximum prison terms for Counts III and IV were eighteen and fifteen years respectively. *See id.* at 12-13. The correct maximum terms were twelve and ten years, respectively; and, therefore, petitioner's aggregate sentence would be from twelve to eighteen years. *See id.*

---

[1] Although petitioner did not speak during this brief proceeding, his presence was indicated on the cover page of the transcript. *See* Dkt. No. 1-1 at Exhibit "F," at 11.

5

### III. DISCUSSION

A.  **Exhaustion**[2]

Respondent concedes that petitioner's plea-related claims are fully exhausted, but asserts that his ineffective assistance of counsel claim is not. *See* Dkt. No. 8 at 16. Specifically, respondent claims that, although petitioner raised his ineffective assistance of counsel claims in his pre-appeal New York Criminal Procedure Law § 440 motion and on appeal to the Appellate Division, petitioner's counsel did not seek leave to raise the issue before the New York Court of Appeals. *See id.* at 17 (citing Ex. 15 at ¶¶ 21-35). As such, respondent claims that, "[b]ecause petitioner did not present this claim to the highest court available to him, the claim is unexhausted." *See id.* (citation omitted).

A petitioner in custody pursuant to a judgment of a state court is entitled to federal habeas relief only if he has exhausted all available state court remedies. *See* 28 U.S.C. § 2254(b)-(c). A claim has been exhausted if it was fairly presented in the state courts, thereby giving the state the "opportunity to pass upon and correct" alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)). A petitioner need not have cited "book and verse on the federal Constitution" in his claim in state court for the claim to have been exhausted. *Picard*, 404 U.S. at 278. Instead, a petitioner may have fairly presented his claim to the state courts through

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

---

[2] Respondent concedes that the petition is timely. *See* Dkt. No. 8 at 15-16.

*Daye v. Attorney Gen. of the State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).

As the Second Circuit has held, "'to invoke "one complete round of the State's established appellate review process" . . . , a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal.'" *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (quoting *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005)) (internal quotation omitted). Applicants for leave to appeal must submit briefs and other documents to the Court of Appeals, identifying the issues upon which the application is based, and must focus upon identifying problems of reviewability and preservation of error. *See id.* (quotations omitted).

The court in *Smith v. Duncan* specifically stated that the Court of Appeals would construe a petitioner's leave application as abandoning any claims that were presented to the Appellate Division, but not included in the leave application. *See id.* (quotation omitted). In *Grey v. Hoke*, the Second Circuit held that where a petitioner requested review by the New York Court of Appeals of only one of three issues raised in the Appellate Division, the other two claims were not presented for exhaustion purposes. *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). The court found that it would undermine the principles of comity to consider a constitutional claim as to which no ruling was requested from the state court. *See id.*

In the present matter, petitioner raised his plea-related claims in federal constitutional terms in his pre-appeal New York Criminal Procedure Law § 440 motions, and on appeal to the Appellate Division. *See* Index of State Court Records at Exhibits 1, 4 and 9. Thereafter, petitioner's counsel sought to raise the claims in his leave application to the New York Court of Appeals. *See id.* at Exhibit 15 at ¶¶ 21-35. As such, the plea-related claims are exhausted.

Petitioner's ineffective assistance claims were raised in his pre-appeal New York Criminal Procedure Law § 440 motions and on appeal to the Appellate Division. However, petitioner's counsel did not seek leave to raise the ineffective assistance claim in the New York Court of Appeals. His application was limited to the plea-related issues. *See id.* at ¶¶ 21-35. Since petitioner did not present this claim to the highest court available to him, the claim is unexhausted. *See Grey*, 933 F.2d at 120; *see also Daye*, 696 F.2d at 190 n.3 (citation omitted).

### 1. *Procedural default*

If petitioner has not exhausted his state court remedies, but no longer has remedies available in state court with regard to these claims, they are "deemed" exhausted but are also procedurally defaulted. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citations omitted). A state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim only if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or that failure of the court to consider the claim will result in a miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991). A miscarriage of justice occurs if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In this case, petitioner cannot return to state court on his ineffective assistance of counsel claim since he has already raised those claims on appeal to the Appellate Division, and he did not raise it in his application for leave to appeal to the New York Court of Appeals. *See Bossett*, 41 F.3d at 829 (citation omitted). Because petitioner cannot return to state court, he has not only failed to exhaust his claim, but has also procedurally defaulted on the ineffective assistance of

8

counsel claim. As such, the Court may address the merits of this claim only upon a showing of cause for the default and prejudice to the petitioner, or that to allow the conviction to stand would constitute a fundamental miscarriage of justice. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Bosset*, 41 F.3d at 829 (2d Cir. 1994). When petitioner is not able to show cause for the procedural default, the court need not decide the issue of prejudice, because in order to qualify for habeas review under this exception, petitioner must demonstrate both cause and prejudice. *See Long v. Lord*, No. 03-CV-461, 2006 WL 1977435, *6 (N.D.N.Y. March 21, 2006) (citing *Stepney*, 760 F.2d at 45) (footnote and other citations omitted).

In the present matter, petitioner has failed to establish cause for his default. Although petitioner did argue that his counsel was ineffective in his petition for a writ of error *coram nobis*, he did not specifically argue that his counsel was ineffective for not asking the New York Court of Appeals to review his plea counsel's effectiveness. *See* Index of State Court Records at Exhibit 17. Even if he had raised that claim in his *coram nobis* motion, petitioner failed to appeal the state court's denial of that motion, as required. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

Since petitioner has failed to establish cause for his default, the Court need not decide the issue of prejudice. Alternatively, petitioner has failed to demonstrate a "fundamental miscarriage of justice," which requires a petitioner to demonstrate that his is an "extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992). Petitioner does not make such a claim and the record does not support a claim of actual innocence.

As such, the Court finds that petitioner procedurally defaulted on his ineffective assistance of counsel claim and failed to establish cause for the default. Despite this default, however, as

discussed below, the Court will still address petitioner's ineffective assistance claim on the merits. *See Lucas v. Conway*, No. 08 Civ. 8405, 2009 WL 2525489, *5 (S.D.N.Y. July 16, 2009) (holding that "the law is clear that a habeas court may deny a claim on the merits despite a petitioner's failure to exhaust it fully before the state courts" (citing 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).

**C.     Standard of review**

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006), *cert. granted, judgment vacated and cases remanded on other grounds by* 549 U.S. 1163 (2007), that

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Id.* at 73 (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (quotation omitted); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (quotation omitted).

In providing guidance concerning the application of this test, the Second Circuit has observed that

> a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable"

10

> from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [*Williams v. Taylor*, 529 U.S. 362] at 405-06, 120 S. Ct. 1495 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001) . . . . [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams*, 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted). Courts have interpreted "objectively unreasonable" in this context to mean that "'some increment of incorrectness beyond error'" is required for the habeas court to grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quotation omitted).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan*, 261 F.3d at 312 (quotation omitted). In this regard, it is not necessary for the state court to refer explicitly to the particular federal claim or to relevant federal case law. *See id.*

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits," the state-court's decision is not entitled to AEDPA deference; and, instead, the federal habeas court must apply the pre-AEDPA standard of *de novo* review to the state-court's disposition of the

11

federal claim. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

**D.     Petitioner's plea related claims**

Petitioner argues that "his Fourteenth Amendment rights were abridged when the sentencing court imposed a sentence greater than the one which was plea bargained for, and, without providing [p]etitioner the right to withdraw his plea[.]" *See* Dkt. No. 1-2 at 13. Specifically, petitioner argues that his rights were violated because (1) his guilty plea was not knowing, voluntary, and intelligent; (2) the sentence imposed was higher than that jointly recommended by petitioner's counsel and the prosecutor; and (3) petitioner was not permitted to withdraw his guilty plea following imposition of a sentence that was higher than counsel and the prosecutor had recommended. *See id.* at 14-20. Moreover, petitioner asserts that he signed the plea agreement, in his cell, without first reading the document because he did not have his glasses and, therefore, his plea was not knowingly and voluntarily entered into. *See id.* at 17-18. Further, petitioner argues that the sentencing court's colloquy does not rectify this deficiency because the court did not properly inquire whether petitioner understood what he was doing, what the implications of the form were, and whether he understood that the court was not bound by the terms set forth in the joint recommendation. *See id.*

In his appeal to the Appellate Division, Third Department, the court held that petitioner's guilty plea was "knowing, voluntary and intelligent" and that, "[c]ontrary to [petitioner's] contentions, [the] County Court never expressly agreed to bind itself to the sentence recommendation, instead advising [petitioner] during the plea colloquy – albeit indirectly – that he 'could get up to 54 years whether [he is] convicted *by plea* or after a trial [by] a jury.'" *People v.*

12

*Bunce*, 45 A.D.3d 982, 984 (3d Dep't 2007) (emphasis in original). Next, the court acknowledged that the County Court did not elicit whether petitioner read the document before signing it and whether he understood that the court was not bound by the sentence recommendation, but found his argument's unpersuasive because "the signed written agreement explicitly highlighted in large bold print that the court was making no sentencing promises." *Id.* Although the Third Department noted that "the better practice is for the trial court (or counsel) – in all such cases – to explicitly and clearly advise the defendant on the record prior to the acceptance of the plea, that the court is not bound to follow the People's sentence recommendation . . . , rather than simply advising what maximum sentence he could receive if convicted on the plea (or after trial) or relying on a statement of noncommitment buried in a lengthy written plea agreement," the court held that the record showed that petitioner was adequately advised of the plea terms, including the fact that the County Court was not bound by the recommendation. *See id.* at 984-85. Finally, the Third Department found petitioner's allegations that he was never given a chance to read the plea agreement before signing it and that he was having trouble hearing the judge to be nothing more than "conclusory allegations contained in [petitioner's] self-serving affidavit [which] are unsupported by any other evidence in the record and are contradicted by the transcript of the plea colloquy, in which [petitioner] affirmed that he signed the document in consultation with his attorney and understood it 'in all respects' and swore to its truth." *Id.* at 985.

### *1. Petitioner's plea was knowing, voluntary and intelligent*

A habeas petitioner may challenge the knowing and voluntary nature of a guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973). The voluntariness of a petitioner's guilty plea is determined by considering the totality of the circumstances surrounding the entry of the plea,

13

*see Brady v. United States*, 397 U.S. 742, 757 (1970), including whether the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the petitioner," *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Consequently, where a petitioner "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him to them." *Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) (citations omitted).

A guilty plea "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. . . . [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). That said, "[a] criminal defendant's erroneous, subjective ideas, produced by conversations with counsel, 'in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his guilty plea.'" *King v. Cunningham*, 442 F. Supp. 2d 171, 183 (S.D.N.Y. 2006) (quoting *Curits v. Zelker*, 466 F.2d 1092, 1098 (2d Cir. 1972)). Rather, a habeas petitioner "bear[s] the burden of showing that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justify his mistaken impression." *Curtis*, 466 F.2d at 1098.

The Appellate Division's denial of this claim on the merits was not contrary to or based on an unreasonable application of these principles. First, the written agreement clearly set forth the fact that the court was not bound to impose the jointly-recommended sentence and the court, at sentencing, made clear that, even though petitioner was pleading guilty, he could still be sentenced to a maximum term of fifty-four years' imprisonment. *See Bunce*, 45 A.D.3d at 984.

Moreover, petitioner's responses to the court during the colloquy were direct and appropriate and refute any claims that petitioner did not understand what was happening or that he could not hear the judge.  *See* Dkt. No. 1-1 at Exhibit "F," at 3-6.  Petitioner affirmed that he had no disabilities "that affect[ed] his ability to understand these proceedings and this document;" that he understood his trial rights and wished to waive those rights; that he understood that he "could get up to 54 years [in prison] whether [he was] convicted by plea or after a trial;" that he was pleading guilty "freely and voluntarily;" that there was no doubt in his mind "that this [was] what he want[ed] to do;" and that he had no questions for the court or counsel.  *See id.* at 5-8.  Thereafter, petitioner conferred with counsel and explained the factual circumstances surrounding each act contained in the indictment.  *See id.* at 10-13.

The Appellate Division correctly rejected petitioner's challenges to the voluntariness of his plea since none of his claims are supported by the record.  The County Court made clear that it was not bound by the terms of the joint recommendation; and the Appellate Division properly rejected petitioner's claim that he was not permitted to read his plea agreement as conclusory and self-serving.

Based on the foregoing, the Court finds that the state court's decision that petitioner knowingly, voluntarily and intelligently pled guilty was not contrary to or an unreasonable application of clearly established federal law.

### 2. The County Court was entitled to impose a sentence above the joint recommendation and petitioner was not entitled to withdraw his guilty plea

"'[W]here a habeas corpus petitioner seeks relief from a plea on the ground that he subjectively misunderstood the consequences of his choice, he must provide "substantial objective

proof" showing the misunderstanding was "reasonably justified."'" *Scales v. N.Y.S. Div. of Parole*, 396 F. Supp. 2d 423, 433 (S.D.N.Y. 2005) (citations omitted).  "'Although a claim frequently asserted [by habeas petitioners] is that the guilty plea was entered by the prisoner in the erroneous belief, induced by discussions with his lawyer, that he would receive a lesser sentence than that ultimately imposed or that he would be permitted to withdraw his guilty plea, this has repeatedly been held insufficient to warrant the issuance of a writ.'" *Id.* (quoting *Curtis*, 466 F.2d at 1098) (other citations omitted).  "When a habeas petitioner asserts that a plea was based on such a misunderstanding, '[t]o justify the issuance of a federal writ vacating his guilty plea, the petitioner must bear the burden of showing that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression.'" *Id.* at 433-34 (quotation omitted).

  In the present matter, petitioner has not met this burden.  Although the sentencing court did not directly state that it was not bound to follow the joint recommendation, the court did inform petitioner that he "could get up to 54 years whether . . . convicted by plea or after trial [by] a jury."  *See* Dkt. No. 1-1 at Exhibit "E," at 7.  Moreover, as the Appellate Division noted, the County Court never agreed to bind itself to the sentencing recommendation; and, therefore, petitioner was not entitled, under New York law, to withdraw his guilty plea.  *See Rosa v. Herbert*, 277 F. Supp. 2d 342, 354 (S.D.N.Y. 2003) (holding that "[t]he court is not bound by a plea agreement between the prosecutor and the defendant, even if the court stated that it would go along with the terms of the agreement" (quoting *People v. Farrar*, 52 N.Y.2d 302, 437 N.Y.S.2d 961, 419 N.E.2d 864, 865-66 (1981)).  Although petitioner may have subjectively believed that the County Court was bound by the "Joint **Recommendation**," the record establishes that any such belief was objectively unreasonable.

Based on the foregoing, the Court finds that the state court's decision that the County Court was not bound by the joint recommendation and that petitioner was not entitled to withdraw his plea was not contrary to or an unreasonable application of clearly established federal law.

**E.      Petitioner's ineffective assistance of counsel claim**

Petitioner contends that his counsel was ineffective because, at the plea proceeding, when petitioner allegedly could not hear the judge, counsel allowed the proceedings to continue without telling petitioner what the court was saying, or without relaying the court's words at a speed at which petitioner could comprehend them. *See* Dkt. No. 1-2 at 21.  Moreover, petitioner claims that he received ineffective assistance because his counsel failed to advise him regarding the contents of the plea agreement, which he could not read, or the specific rights he was waiving. *See id.* at 21-22.  Further, petitioner asserts that his attorney did not advocate on his behalf or make a motion to withdraw his plea once the County Court imposed a sentence greater than that called for in the joint recommendation.  *See id.* at 22.

Under the standard that the Supreme Court promulgated in *Strickland v. Washington*, 466 U.S. 688 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.  To establish an ineffective assistance claim within the context of a guilty plea, a petitioner must show that his counsel's constitutionally ineffective performance affected the outcome of the plea process such that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v.*

17

*Lockhart*, 474 U.S. 52, 56 (1985). The habeas petitioner bears the burden of establishing both deficient performance and prejudice. *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) (citation omitted).

Even had petitioner exhausted this claim, it would still fail on the merits. The Appellate Division correctly held that petitioner's "claims of ineffective assistance are unsupported by the record, which reflects that he expressed satisfaction with counsel during the plea colloquy, and the contrary conclusory allegations raised in his motions to vacate were reasonably rejected without a hearing." *Bunce*, 45 A.D.3d at 985; *see also Whitehurst v. Senkowski*, 485 F. Supp. 2d 105, 120 (N.D.N.Y. 2007) (holding that the fact that the petitioner "expressly advised the County Court that he was satisfied with the manner in which he was represented by counsel with respect to the criminal charges against him . . . supports the state court's determination that [the petitioner's] claim of ineffective assistance was without merit").

Moreover, petitioner cannot establish that there is a reasonable probability that, but for any alleged ineffective assistance, he would not have pled guilty. Petitioner faced an aggregate sentence of approximately fifty-years' imprisonment. Although the County Court eventually rejected the parties' joint recommendation, his attorney was able to convince the prosecutor to recommend a sentence that was significantly lower than the maximum that he faced. *See Whitehurst*, 485 F. Supp. 2d at 120 (holding that the fact that the defendant had received a favorable plea bargain "militate[d] against a finding that his attorney rendered ineffective assistance" (citation omitted)); *see also Seifert v. Keane*, 74 F. Supp. 2d 199, 206 (E.D.N.Y. 1999) (holding that, "[g]iven the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient" (footnote and citations omitted)), *aff'd*, 205 F.3d 1324, 2000 WL 232173 (2d Cir. 2000); *see also People v. Martin*, 17 A.D.3d 775, 777 (3d Dep't 2005) (holding

that counsel provided "meaningful" assistance even though he failed to move to withdraw the guilty plea when the sentence was above the sentence included in the plea agreement, where the plea bargain was "very favorable" (citation omitted)).

Finally, it cannot be said that petitioner's counsel's failure to make a motion to withdraw his plea constituted ineffective assistance because, as discussed above, petitioner was not entitled, under New York law, to withdraw his guilty plea. *See Rosa*, 277 F. Supp. 2d at 354 (quotation omitted).

Based on the foregoing, the Court finds that the state court's decision that petitioner's counsel provided effective assistance was not contrary to or an unreasonable application of clearly established federal law.

**F.    Certificate of appealability**

The Court notes that 28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[3]  28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Since petitioner has failed to make such a showing, the Court declines to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

---

[3] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of petitioner's claims.

**IT IS SO ORDERED.**

Dated: May 5, 2011
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge